UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:14-CR-35-HAB |
| | ) | |
| ANDREW WOOD | ) | |

**OPINION AND ORDER**

Defendant Andrew Wood has filed a Motion for Compassionate Release Under the C.A.R.E.'s [sic] Act (ECF No. 453). Following notice by the Federal Community Defender that he was declining to represent Defendant, the Government filed its response in opposition to Defendant's Motion. (ECF No. 458). Having considered the filings, the Court finds that Defendant does not meet the standard for compassionate release and his motion will be denied.

**A.   Defendant's Crime**

Defendant was one of two individuals that robbed the iAB Bank in Harlan, Indiana in September 2014. Although Wood was not armed his partner-in-crime was, using the firearm to terrorize tellers and shoot out the glass front door of the bank to facilitate the two men's escape. The shot nearly struck two elderly bank customers that had arrived as Defendant and his accomplice exited the bank.

The escape attempt did not last long. The two men were confronted immediately by law enforcement. While the other robber surrendered without incident, Defendant fled through a nearby residential neighborhood. Defendant was apprehended after a short search.

As a result of the foregoing, Defendant was charged with Bank Robbery by Force or Violence and Assault with a Dangerous Weapon and Aiding and Abetting, all in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2, as well as Use of a Firearm During and in Relation to

a Crime of Violence and Aiding and Abetting, all in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. Defendant pled guilty to both charges and was sentenced to a term of imprisonment of 135 months and a two-year term of supervised release. The vast majority of Defendant's sentence was for the firearms offense, for which Defendant received the mandatory-minimum 120 months. Defendant is currently incarcerated at FCI Manchester in Kentucky, where he has served just over one-half of his sentence.

**B.     Legal Analysis**

Defendant's Motion requests a sentencing modification. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which permits the court to reduce a sentence based on a retroactively applicable amendment to the sentencing guidelines that lowers the defendant's guideline range. 18 U.S.C. § 3582(c)(2). Another allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A).

Defendants request is one for compassionate release pursuant to § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

>   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
>   (i) extraordinary and compelling reasons warrant such a reduction …
>
>   … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because the Defendant, not the Director of the BOP, filed the motions, the Government asserts that the Defendant must first demonstrate that he meets the statutory exhaustion requirement to proceed further. Defendant asserts that he has "excersised [sic] all [his] administrative remedies" through the BOP (ECF No. 453 at 6), while the Government asserts that there is no evidence Defendant has exhausted any administrative remedies (ECF No. 458 at 12). "Two questions are presented by this issue, namely whether the exhaustion requirement is jurisdictional and whether, if not jurisdictional, the exhaustion requirement is waivable over the government's objection." *United States v. Council*, No. 1:14-CR-14-5-TLS-SLC, 2020 WL 3097461, at *4 (N.D. Ind. June 11, 2020).

This Court has previously held that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, *see United States v. Hayden*, No. 1:07-CR-68-HAB, 2020 WL 2079293, at *1 (N.D. Ind. Apr. 30, 2020), relying on the Seventh Circuit's decision in *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015); *see also*, *Council*, 2020 WL 3097461 at *4 ("Following the reasoning in *Taylor*, the Court finds that Congress did not "clearly state" that the exhaustion requirement is jurisdictional in § 3582(c)(1)(A); *United States v. Santiago*, No. 2:16-CR-174-JVB-JEM, 2020 WL 3396899, at *2 (N.D. Ind. June 19, 2020) ("Because Congress did not mark the exhaustion requirement as jurisdictional, the Court finds that it is non-jurisdictional."); *United States v. Cox*, No. 4:18-cr-17-TWP-VTW-1, 2020 WL 1923220, at *3 (S.D. Ind. Apr. 21, 2020). Thus, the Defendant's motion is properly adjudicated in this Court regardless of whether he has or has not completed the statutory exhaustion process.[1]

---

[1] The Court is aware that the Government resists the argument that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional and has, in other compassionate release cases in this division, reserved its right to contest this issue. *See United States v. Shellman,* 1:17-cv-17, ECF No. 265 at fn. 4.

Turning next to the issue of waiver, the Government urges that the Defendant's failure to properly exhaust under § 3582(c)(1)(A) ends the analysis, calling his failure a "glaring roadblock foreclosing compassionate release." (ECF No. 458 at 12). Whether this is true, however, is an ongoing debate throughout the country. Some courts have concluded that the exhaustion requirement is a mandatory one not subject to waiver or other equitable consideration; others make the case that rigid adherence to the exhaustion requirement precludes a district court from exercising judicial discretion to take into account exigent circumstances. *See United States v. Russell,* No. 1:14-CR-6-HAB, 2020 WL 2989160, at *3 (N.D. Ind. June 4, 2020) ("District courts across the country are struggling daily with whether strict compliance with the exhaustion provision is necessary, especially in light of the serious risks associated with COVID-19.") (listing cases). Because of the lack of clear precedent, this Court has previously "put to the side the thorny issue of exhaustion to tackle the easier issue" of whether the defendant in this case has presented extraordinary and compelling reasons to warrant a sentence reduction. *United States v. Wolfe*, 1:15-cr-169, 2020 WL 2615010, at *2 (S.D. Ind. May 22, 2020); *Council*, 2020 WL 3097461, at *5. This case is no different.

Defendant's primary argument in favor of release is his asthma, for which he takes albuterol. Additionally, he points to a host of programs he has completed while incarcerated to justify his release and demonstrate his rehabilitation, states that he has had impeccable prison conduct, and believes he has served a significant portion of his sentence to adequately punish him. He further indicates that he wants to be released to spend time with his ailing grandmother.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence

4

reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court must determine whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the Defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See Council*, 2020 WL 3097461, at *5–7; *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and

his personal health conditions." *See Council*, 2020 WL 3097461, at *5; *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020). !

In this case, the Court has almost no ability to meaningfully assess Defendant's medical condition. Defendant has provided the Court with no medical records demonstrating the severity of his asthma. The Government apparently has Defendant's BOP medical records (ECF No. 458 at 13) but similarly provided the Court with nothing. All the Court is left with, then, is a bare diagnosis of asthma and the name of a medication. This is insufficient to demonstrate extraordinary and compelling circumstances. Moreover, Defendant, who is 25, is not in an at-risk age group and he has not identified any family circumstances that would aid his cause.[2]

As for his confinement, as of July 8, 2020, FCI Manchester has one confirmed case of COVID-19. There have been no inmate deaths.[3] "The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See Melgarejo*, 2020 WL 2395982, at *3. Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id.* at 5–6. *See also United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

---

[2] The Court does acknowledge and appreciate that the Defendant has completed a number of programs and vocational training while incarcerated. He is to be congratulated for his efforts at rehabilitation and self-improvement.

[3] https://www.bop.gov/coronavirus/

Aside from his generalized fear of contracting COVID-19, the Defendant has not set forth any basis for this Court to conclude that the institution is unable to successfully contain the outbreaks there. The Government's brief cites ongoing efforts by the Bureau of Prisons to take serious and substantial steps to reduce the spread of COVID-19 within its facilities. *See* Federal Bureau of Prisons, COVID-19 Action Plan: Phase Seven (posted on May 20, 2020), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited June 11, 2020); see also, BOP COVID-19 Modified Operations Plan, https://www.bop.gov/coronavirus/covid19_status.jsp. The low infection rate at this institution is a testament to the BOP's mitigation and safety efforts.

Finally, with respect to the §3553(a) factors, the Court observes that the Defendant has served just over half of his 135-month sentence. This sentence was imposed to reflect the seriousness of the offense, promote respect for the law as well as to afford adequate deterrence and to protect the public from further crimes of the defendant. As the Court has noted, the vast majority of the sentence reflects Congress' decision to mandate a ten-year prison sentence for those individuals who use a firearm while committing a violent crime. Defendant has made a number of positive changes while incarcerated but no amount of § 3553(a) factors could have brought him below the mandatory minimum at sentencing, and the Court sees no reason why, standing alone, they should do so now. The Court finds that the significant sentence reduction that Defendant seeks would greatly undermine the above statutory purposes of sentencing.

In sum, because this Court does not find extraordinary and compelling circumstances exist for the Defendant's release and a reduction of sentence is inconsistent with the § 3553(a) factors, Defendant does not meet the criteria for compassionate release.

**C.     Conclusion**

For the foregoing reasons, Defendant's Motion for Compassionate Release Under the C.A.R.E.'s [sic] Act (ECF No. 453) is DENIED.

SO ORDERED on July 8, 2020.

    s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT